UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY K. PLEASANT,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHELLE TURNER, DOMINIC LARA, RYAN RASMUSSEN, PAUL LYON, and MATTHEW SERRATTO,<br><br>    Defendants. | **1:13-cv-00329 LJO-GSA**<br><br>**FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL WITHOUT LEAVE TO AMEND**<br><br>(ECF No. 14)<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

## I. INTRODUCTION

Plaintiff Terry Pleasant ("Plaintiff"), appearing *pro se*, filed a First Amended Complaint (the "FAC") on January 6, 2014, after his initial Complaint was dismissed with leave to amend. ECF No. 10 (the "First Screening Order"). The FAC alleges violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 18 U.S.C. § 241 against Michelle Turner, Dominic Lara, Ryan Rasmussen, Paul Lyon, and Matthew Serratto (collectively, the "Defendants").[1] *Id*. The Court has screened the Complaint and RECOMMENDS that the complaint be DISMISSED WITHOUT LEAVE TO AMEND.

---
[1] Plaintiff excludes Lyon from the 42 U.S.C. § 1985 claim.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusion are not. *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hospital Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe pro se pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## III. PLAINTIFF'S ALLEGATIONS

### a. Procedural Posture

Plaintiff is currently incarcerated at the California State Prison in Corcoran. Plaintiff was prosecuted in Merced County Superior Court for: (1) sodomy by threat (California Penal Code § 286(c)(2)(A)); (2) threatening great bodily injury (California Penal Code § 422); (3) battery with

2

serious bodily injury (California Penal Code §§ 243(d)); (4) assault by force likely to cause great bodily injury (California Penal Code § 245(a)(4)); and (5) false imprisonment (California Penal Code §§ 236, 237). Criminal Information, ECF No. 1, Exh. G. Plaintiff was eventually convicted of: (1) threatening great bodily injury; (2) battery with serious bodily injury; and (3) assault by force likely to cause great bodily injury. FAC ¶ 29. Plaintiff was found "not guilty" of the false imprisonment and sodomy by force charges.[2]

Plaintiff filed his original complaint on March 7, 2013. In that Complaint, he alleged a single claim of malicious prosecution against Michelle Turner, the victim in his criminal case, Ryan Rasmussen, the police officer who investigated his criminal case, and Matthew Serratto, the deputy district attorney who prosecuted his criminal case. The original Complaint was dismissed with leave to amend on October 28, 2013. ECF No. 10. The First Screening Order also contained detailed instructions on how Plaintiff could re-plead his claims as a § 1983 claim against the named Defendants.

Plaintiff has now filed the FAC and adjusts his allegations to fit more comfortably within the framework provided in the First Screening Order. He has also named two additional defendants: Dominic Lara, the victim's next-door neighbor, and Paul Lyon, the deputy public defender who represented Plaintiff in his criminal case.

   **b. Factual Allegations**

The FAC is a lengthy recitation of facts designed to establish that the named defendants conspired to investigate, and later prosecute Plaintiff for criminal charges of which he was innocent. At some point during 2012 or 2013, Plaintiff alleges that he was living with Turner, the victim.[3] FAC ¶¶ 11, 18. In April 2012, Turner was injured and required medical treatment at a local hospital. *Id*. at ¶ 11. At the hospital, Turner told staff that she had fallen, injuring her knee.

---

[2] It is not entirely clear which charges Plaintiff was acquitted of; although some of the documents submitted as attachments to the FAC claim that he was found not guilty of "false imprisonment and sodomy," the FAC itself asserts that Plaintiff was "convicted for 237 misdemeanor false imprisonment." California Bar Association Complaint ¶ 2, ECF No. 14, Exh. H; FAC ¶ 29, ECF No. 14. The matter is complicated by the over two hundred pages of documents related to his case that Plaintiff has submitted attached to the FAC. For the purposes of this screening order, however, it is enough to say that Plaintiff was found guilty of the battery, assault, and threatening bodily injury charges.

[3] According to the FAC, Turner had previously been married to Plaintiff's brother and the two had known each other for 23 years.

3

She received a number of stitches as a result. At some later date, while Plaintiff was sleeping, Turner went next door to Lara's house. Lara then called 911 to report "that Turner is [sic] being held hostage inside her resident [sic] but had managed to escape while Plaintiff was asleep."[4] *Id.* at ¶19. Plaintiff alleges that he "believes that the three of them had already previously conspired to have Plaintiff arrested, jailed and permanently removed from [Turner's] resident [sic]."[5] *Id.* at ¶ 18.

After Lara called 911, Rasmussen was contacted by a police dispatcher and arrived at Turner's residence, where he was greeted by Plaintiff. *Id.* at ¶ 20. Plaintiff gave Rasmussen "a false name believing that he had a pending warrant for his arrest." *Id.* Rasmussen then spoke with Turner, who told him that Plaintiff had: (1) held her captive against her will for the past week; (2) "sodomized her for the purpose of teaching her a lesson"; (3) pushed her into a bed, injuring her knee; (4) injured her knee after it had been treated, reopening the stitches she had received; (5) thrown scalding water on her; and (6) told her that "he would beat her ass and break every bone in her body." *Id.* at 22. Turner declined Rasmussen's offers to meet with a victim's advocate from the Valley Crisis Center (a local domestic violence center).

Rasmussen took the Plaintiff into custody after determining that Plaintiff had provided a false name to him. After discussing Turner's allegations with Plaintiff, Plaintiff became agitated and Rasmussen placed him under arrest. After Plaintiff was booked into county jail, Rasmussen offered to connect Turner with a local Sexual Assault Response Team to undergo a medical exam. Turner declined the offer. Plaintiff concludes by stating that Rasmussen "acted malicious [sic] and with ill will" by arresting Plaintiff without probable cause because he arrested Plaintiff despite the facts that:

- Turner's story about her knee injury was inconsistent with what she had told earlier told hospital staff;
- Turner refused Rasmussen's offer to introduce her to an advocate from the Valley Crisis Center;

---

[4] The FAC does not present an entirely clear timeline of events; Plaintiff claims that he was arrested on May 8, 2013, but then says he was convicted on March 18, 2013. The Court has nonetheless endeavored here to place events in the order they occurred.

[5] The "three" that Plaintiff is referring to appear to be Turner, Lara, and Lara's wife. It is unclear why Plaintiff includes Lara's wife as a conspirator but does not name her as a defendant.

4

- Turner declined Rasmussen's offer to undergo a SART exam;
- Turner is a drug user; and,
- Turner has a criminal history.

Shortly thereafter, Deputy District Attorney Serratto filed a criminal complaint against Plaintiff. Plaintiff claims that Serratto "fabricated evidence" by allowing Turner to testify against Plaintiff at trial, despite the fact that the aforementioned facts impinged on Turner's credibility. In addition, he cites a jailphone call (the transcript of which he attaches to the FAC) in which he asserts his innocence of the charged offenses, which he believes should have demonstrated to Serratto that Turner's allegations were false. Plaintiff then alleges that Serratto "knew from the outset that the felony charges were baseless and lack [sic] probable cause . . . he conspired with the defendants and directed a joint action against plaintiff for the purpose of obtaining a [sic] illegal conviction."[6] *Id.* at ¶ 51.

Deputy Public Defender Lyon was appointed to represent Plaintiff. In the course of the representation, Lyon attempted to negotiate a favorable plea bargain with Serratto. Serratto informed Lyon and Plaintiff that if Plaintiff did not plead guilty to the charges, he would be pursuing additional criminal charges against Plaintiff. He also informed them that he was confident that Turner would testify against Plaintiff and that if Plaintiff continued to "push this case to a jury trial . . . he will lose." *Id.* at ¶ 43. Lyon appears to have concurred in this assessment; he advised Plaintiff to take the deal and plead guilty.[7] *Id.* at ¶ 44.

At trial, Plaintiff claims that Lyon "acted maliciously and with ill will" because he:

- Failed to adequately prepare for trial;
- Did not consult adequately with Plaintiff during trial;

---

[6] Plaintiff also levels an allegation against Serratto and Rasmussen involving their conduct towards Turner. At some point while Plaintiff's trial was pending, Rasmussen assisted several other police officers in searching Turner's residence in connection with an arrest made in a separate case. Rasmussen obtained a search warrant waiver from Turner, although the officers ultimately obtained a search warrant before beginning their search. Plaintiff alleges that "Turner avoided prosecution with the assistance of Officer Rasmussen and Deputy D.A. Serratto." FAC ¶ 48. It is unclear why Turner would have been prosecuted for her role in these events (it appears from the documents attached to the Complaint that the individual the officers were searching for had stored some stolen merchandise at Turner's residence) and unclear whether Serratto played any role in this event.

[7] It is not clear from the FAC what terms were offered in the plea bargain. It is clear, however, that Plaintiff declined to plead guilty, Serratto amended the criminal information, and the parties proceeded to trial, where Plaintiff was found guilty of some, but not all, of the charges.

5

- Failed to adequately investigate Turner's mental and medical history;
- Did not adequately investigate Turner's drug use;
- Failed to object to the admissibility of photographs of Turner's injuries and an unredacted version of the jailhouse call transcript (which Plaintiff now submits with his FAC);
- Did not conduct "proper voir dire";
- Failed to "object to evidence";
- Did not propose jury instructions;
- Failed to adequately preserve "meritorious issues in appellate proceedings";
- Advised Plaintiff not to testify;
- Did not "call any witnesses"; and,
- Gave opening and closing statements that were "totally deficient and without a sense of direction."

Plaintiff concludes his allegations against Lyon by saying that Lyon rendered ineffective assistance of counsel and "acted in concert and joint action with Defendants Turner and Lara." *Id.* at ¶ 56.

Ultimately, Plaintiff determines that all the named Defendants must have been conspiring in a "preconceivable [sic] plan" to have him arrested and prosecuted in violation of his constitutional rights. *Id.* at ¶ 55. He thus brings claims under 42 U.S.C. § 1983 and 18 U.S.C. § 241 against all Defendants and a claim under 42 U.S.C. § 1985 against all Defendants except for Lyon. *Id.* at ¶¶ 55, 56, 57. He further requests injunctive and declaratory relief, compensatory and punitive damages, and attorneys' fees. *Id.* at 38.

IV. **DISCUSSION**

    a. **18 U.S.C. § 241 Does Not Provide a Private Right of Action**

Plaintiff seeks relief against the Defendants under 18 U.S.C. § 241, a federal criminal statute that forbids conspiracy to "injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." Section 241, however, "provide[s] no basis for civil liability." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). As

a result, it cannot be used as the basis for a civil suit for damages against any of the Defendants. There is no possible way to amend the FAC to change this fact. Providing leave to amend the FAC here is thus inappropriate; this claim must be dismissed.

### b. 42 U.S.C. § 1985

An action under § 1985 requires a plaintiff to allege: "(1) a conspiracy, (2) to deprive any person or a class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980), *citing Griffin v. Breckenridge*, 403 U.S. 88 (1971). Plaintiff fails to satisfactorily allege the first two required elements, despite specific instructions in the First Screening Order on the requirements to plead conspiracy.

#### *i. Section 1985 Requires a Deprivation of Equal Protection*

Section 1985, which was originally enacted during Reconstruction, has been roundly interpreted to require proof of some "invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In other words, because the claim requires a defendant to deprive the plaintiff of the "equal protection of the laws," a plaintiff must also "demonstrate a deprivation . . . motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992), *quoting Griffin*, 403 U.S. at 102.

At no point in the FAC does Plaintiff make any effort to allege that the "conspiracy" that he was subjected to was motivated by discrimination on the basis of any protected characteristic. In fact, Plaintiff asserts that the actions taken by the Defendants were actually motivated by a simple desire to get him "permanently removed" from Turner's residence so that others could move in in his place. FAC ¶ 18 ("It's further believed that Taylor was making plans and preparing to move from her resident [sic] and discuss and considered the option of her father Choza moving in with her mother Turner and that Turner agreed to this arrangement. However, their [sic] was still one problem remaining: How to get rid of plaintiff?"). The facts as pled thus establish that

there was no racial animus present. Because Plaintiff has already provided an alternative, non-discriminatory motivation for the actions alleged, leave to amend is not appropriate here. *Aldabe*, 616 F.2d at 1092 (upholding dismissal with prejudice where complaint "failed to allege any facts showing such invidiousness").

### ii. Section 1985 Requires Specific Facts Supporting the Existence of a Conspiracy

Even if leave to amend were provided with respect to the § 1985 claim, however, Plaintiff also fails to properly allege facts establishing the conspiracy requirement of § 1985. In the First Screening Order, Plaintiff was expressly instructed that, to show a conspiracy, a plaintiff "must show an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy." First Screening Order 10:13-20, ECF No. 10, *citing United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989). Plaintiff was also instructed that "[p]rivate persons cannot be held liable for conspiracy under the Civil Rights Statutes if the other conspirators are state officials who are themselves immune to liability under the facts alleged." *Id.*, *citing Sykes v. State of California*, 497 F.2d 197, 202 (9th Cir. 1974).

In spite of this instruction, Plaintiff has not significantly amended his pleadings to demonstrate a "meeting of the minds" between the respective participants of the alleged conspiracy. With respect to Lara and Turner, for example, he simply alleges that "Plaintiff believes" that they "had already previously conspired to have Plaintiff arrested, jailed and permanently removed." FAC ¶ 18. With respect to Rasmussen, he concludes several paragraphs by stating that "Officer Rasmussen acted in concert with Turner and Lara's preconceived plan to deprive Plaintiff of his liberty." [8] FAC ¶¶ 31, 33. Plaintiff does the same with Serratto, repeating in at least three instances that "Deputy D.A. Serratto acted in concert with the defendants' conspiracy or preconceived plan and directed a joint action against Plaintiff that deprived Plaintiff

---

[8] As noted above, Plaintiff excludes Lyon from his § 1985 charge. Despite this, he still recites the allegation that "Lyon acted in concert and entered joint action with the defendants and render [sic] ineffective assistance counsel [sic] that deprived plaintiff of his liberty" after each paragraph concerning Lyon. FAC ¶¶ 35, 37.

a fair jury trial and of his liberty for eight years." FAC ¶¶ 39, 41, 51.

As previously explained, however, a claim of conspiracy "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (dismissing a complaint that had "legal conclusions but no specification of any facts to support the claim of conspiracy"). A mere statement that the Defendants "conspired to have Plaintiff arrested, jailed and permanently removed" is not enough. Rather, it is exactly the kind of "conclusory statement" disapproved by *Iqbal*.

Similarly, leave to amend does not seem appropriate here. Plaintiff was advised in the order dismissing his initial complaint of the standards required to show a conspiracy. Even with that knowledge, however, and the addition of nearly 30 pages of factual pleading in the FAC, Plaintiff is unable to state a claim that goes beyond the basic, conclusory statement that Defendants engaged in a conspiracy. *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) ("It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities'"). Dismissal without leave to amend is thus appropriate here.

### c. 42 U.S.C. § 1983

#### i. Lyon is not a state actor, eliminating any possibility of liability

Even construing all of the allegations in a light most favorable to Plaintiff, the FAC cannot establish a claim under 42 U.S.C. § 1983 against Defendant Lyon as a matter of settled law. To state a claim under § 1983, a plaintiff "must allege a violation of a right secured by the Constitution and laws of the United States, and ***must show that the alleged deprivation was committed by a person acting under color of state law.***" *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Plaintiff asserts that he was denied due process and equal protection by Lyon, his court-appointed defense attorney, who was acting under color of state law. It is well-settled, however, that attorneys do "not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (upholding dismissal of a § 1983 claim by a pro se prisoner against a

public defender that alleged that she failed to adequately represent him in criminal proceedings). Thus, none of Plaintiff's legal claims against Defendant Lyon are arguable on their merits and they do not state a claim for which relief can be granted.

Plaintiff attempts to evade this restriction by claiming that Lyon was acting in concert with the other Defendants, but, as explained above, the mere allegation that there was a conspiracy does not make it so. All of the specific actions that Plaintiff alleges Lyon engaged in relate solely to actions he took representing Plaintiff (e.g., deciding which objections to make at trial, conducting voir dire, providing recommendations about potential plea bargains, etc.). There is thus nothing to suggest that Lyon did anything to create liability as a state actor.

Nor can any amendment cure this deficiency. The problem with the FAC is not that Plaintiff has simply failed *to allege* that Defendant Lyon was acting under color of state law; the problem is that, as a matter of settled law, Defendant Lyon *could not have been* acting under color of state law in representing Plaintiff. Consequently, there is no way to remedy the FAC's insufficiency by providing leave to amend.

### *ii. Lara and Turner are not state actors, eliminating any possibility of liability*

Similarly, Defendants Lara and Turner are not state actors and cannot be held liable under § 1983. As the Court explained to Plaintiff in the First Screening Order, "private parties are not generally acting under color of state law, and we have stated that '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").

As with Defendant Lyon, Plaintiff asserts that Lara and Turner were acting in concert with the other Defendants in a conspiracy to see him imprisoned. But the mere statement that a conspiracy existed is not enough. *Price*, 939 F.2d at 708 ("a defendant is entitled to more than the bald legal conclusion that there was action under color of state law"). Moreover, as the Court

previously explained to Plaintiff, "merely complaining to the police does not convert a private party into a state actor." *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989), *citing Rivera v. Green*, 775 F.2d 1381, 1382–84 (9th Cir. 1985). Nor does "merely resorting to the courts" make a private party a state actor. *Price*, 939 F.2d at 708. The only points of contact that Lara and Turner appear to have had with state actors are: (1) when Lara initially called 911; and (2) when Turner spoke to Rasmussen and Serratto and testified against Plaintiff in court. Neither of these establishes a conspiracy.

Like the claim against Lyon, no amendment can cure this deficiency. Plaintiff was advised of the allegations that were required when the original Complaint was dismissed and is still unable to allege the facts required. It is difficult to see how the FAC could be amended further.

### *iii.   Serratto is protected by prosecutorial immunity, precluding any liability*

Plaintiff alleges that Serratto is liable under § 1983 because he: (1) pursued Plaintiff's prosecution, even though he had evidence which hurt Turner's credibility; and (2) engaged in "coercion" by adding additional charges to the criminal information because Plaintiff refused to enter into a plea bargain. It is well-settled, however, that "[p]rosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (holding that without such a rule, "resentful defendants would bring retaliatory lawsuits against their prosecutors").

Protected functions include, among other things, "organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Id.* at 913. ("Prosecutors are absolutely immune from liability for the consequences of their advocacy, however inept or malicious"). It also covers case decisions that occur in the judicial process including, for example, plea bargaining. *Briley v. State of Cal.*, 564 F.2d 849, 856 (9th Cir. 1977) ("As we have recently held, prosecutorial immunity extends to the process of plea bargaining as an 'integral part of the judicial process'"). Immunity protects, in other words, precisely those practices that Plaintiff alleges Serratto engaged in: determining what

charges to level against a criminal defendant, engaging in plea bargaining, and deciding whether to place witnesses of doubtful credibility in front of a jury. *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976) ("The veracity of witnesses in criminal cases frequently is subject to doubt before and after they testify . . . If prosecutors were hampered in exercising their judgment as to the use of such witnesses by concern about resulting personal liability, the triers of fact in criminal cases often would be denied relevant evidence").

Plaintiff also alleges that Serratto used "fabricated evidence" to prosecute him by accepting statements made by Turner, even though Plaintiff believes there is evidence that casts doubt on Turner's credibility. As explained above, however, mere doubts about the "veracity of witnesses" at trial are not enough to pierce the veil of prosecutorial immunity. *Id.* Nor do Plaintiff's allegations establish that the evidence leveled against him at trial was actually fabricated. Plaintiff does not even point to specific statements or perjured testimony that Serratto relied on in the prosecution of the case. Rather, he alleges a short list of reasons he believes that Turner was lying which includes, among other facts, her failure to seek treatment at the crisis center suggested by Rasmussen and the fact that Turner actually received 22 stitches for her knee injury, rather than 40 stitches.[9] Even if accepted as true, these allegations do not make it plausible that Serratto, in connection with Turner and Lara, conjured up testimony in a conspiracy to imprison Plaintiff. And as explained in the Court's previous order, such activities would still be protected by prosecutorial immunity.[10] *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983 . . . This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution").

As with the other Defendants, the deficiencies in the Complaint against Defendant Serratto are not remediable by amendment. The scope of prosecutorial immunity is broad enough

---

[9] The latter allegation is particularly confusing—according to the documents attached to the FAC, Turner did, in fact, tell police that she received 22 stitches after Plaintiff injured her knee. Police Report 2, ECF No. 1, Exh. J.

[10] Plaintiff also labels Serrato's efforts to prosecute the case a "police type investigation," apparently in an effort to fit his facts into the rubric explained in the First Screening Order, which suggested that "police activity" (as opposed to "judicial activity") by a prosecutor might not be protected by prosecutorial immunity. As explained at length in this Order, however, a conclusory allegation is insufficient to plead around the doctrine of immunity.

to encompass even the wide-ranging, conclusory allegations of the Complaint. Adding specific or additional details to the Complaint will not change the fact that Serratto was acting within his official prosecutorial duties when pursuing the criminal case against Plaintiff. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (denial of leave to amend proper where plaintiff's "pleadings do not contain allegations sufficient to overcome judicial and prosecutorial immunities").

### iv. Plaintiff again fails to state a prima facie claim for malicious prosecution against any of the Defendants, including Rasmussen

In the original Complaint, Plaintiff asserted a malicious prosecution claim against all Defendants. In the FAC, he appears to have removed any express reference to "malicious prosecution." Despite this, however, he has used the malicious prosecution framework laid out in the First Screening Order to allege his claims in the FAC.[11] But the FAC still fails to raise any valid malicious prosecution claims.

As explained in the Court's previous order:

> In order to present a cognizable claim of malicious prosecution under § 1983, a plaintiff must plead tortious conduct by defendants under the elements of a state law malicious prosecution claim, *as well as* allege that the defendants acted under color of state law and for the purpose of denying the plaintiff a specific constitutional right.[12] *Poppell v. City of San Diego,* 149 F.3d 951, 961 (9th Cir. 1998); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right"); *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (a malicious prosecution claim is not generally cognizable federally if the state judicial system provides a remedy, but "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights"). "In California, the elements of malicious prosecution are (a) the initiation of criminal prosecution, (b) malicious motivation, and (c) lack of probable cause."[13] *Usher*, 828 F.2d at 562; *see also*

---

[11] For instance, he begins his allegations against Rasmussen by claiming that he "acted malicious [sic] and with ill will" and that the he "lack[ed] probable cause" to proceed with the investigation, but did so anyways. FAC ¶¶ 32, 33. Similarly, he alleges that Lyon acted "maliciously and with ill [sic]." *Id.* at ¶ 36.

[12] Plaintiff is advised that "[m]alicious prosecution, by itself, does not constitute a due process violation." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *also see Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) ("no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause").

[13] "The "malice" element of the [California] malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action, and past cases establish that the defendant's motivation is a question of fact to be determined by the jury." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 874, 765 P.2d 498 (1989); *also see Downey Venture v. LMI Ins. Co*., 66 Cal.App.4th 478, 494, 78 Cal.Rptr. 2d 142 (1998) (the

*Singleton v. Perry*, 45 Cal.2d 489, 289 P.2d 794 (Cal. 1955); *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871, 765 P.2d 498 (1989) (to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice).

Even after this explanation, however, the FAC still fails to allege facts establishing that the Defendants (and, in particular, Rasmussen) acted with malice. Rather, Plaintiff amends the allegations by merely attaching the adverb "maliciously and with ill will" to multiple factual allegations in the FAC. *See, e.g.*, FAC ¶¶ 30, 32, 36, 49. As explained, however, mere conclusory allegations are inadequate to state a claim. Plaintiff does not describe any specific facts to make it plausible that any of the Defendants acted with malice or ill will beyond the desire to bring a "perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose." *Downey Venture*, 66 Cal.App.4th at 494.

Nor does he establish that the criminal proceeding was brought absent probable cause. "Lack of probable cause" in the context of malicious prosecution "depends entirely on an *objective* evaluation of legal tenability based on either (1) the facts known to the attorney at the time he or she brought the prior action or (2) subsequent events in the litigation which demonstrate, as a matter of law, that the prior action was *objectively* tenable." *Downey Venture*, 66 Cal.App.4th at 497-98 (emphasis in original). Thus, a malicious prosecution plaintiff must make a "showing of an unsuccessful prosecution of a criminal or civil action, which any reasonable attorney would regard as totally and completely without merit." *Id.* at 499.

Yet again, Plaintiff tries to meet this requirement simply by concluding that each of the Defendants acted without probable cause. That is not enough. Plaintiff must describe the facts enough to establish, as explained above, that the case against him was objectively untenable. Plaintiff does not do this—and in fact, he even concedes the truth of one of the charges for which

---

motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose …[t]he plaintiff must plead and prove actual ill will or some improper ulterior motive"); Cal. Penal Code § 7 ("[t]he words "malice" and "maliciously" import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law).

14

Rasmussen originally arrested him.[14] FAC ¶ 20.

And the allegations that Plaintiff makes against Rasmussen simply do not demonstrate a lack of probable cause. Plaintiff lists five facts which he believes should have alerted Rasmussen that Turner was being untruthful, but according to the timeline articulated in the FAC (and its attachments), three of the five facts (the inconsistencies in the story Turner told hospital staff, the refusal to undergo a SART exam, and the fact that she had a criminal background) would have been unknown to Rasmussen at the time of Plaintiff's arrest. *Id.* at 32. Thus, according the FAC, Rasmussen would have known, at the time of arrest, that: (1) Plaintiff lied to Rasmussen about his identity when first confronted and resisted attempts to confirm his identity; (2) Turner had a lengthy string of allegations about Plaintiff which were partially substantiated by evidence of injuries; and (3) Plaintiff became agitated and/or refused to answer questions when confronted with Turner's allegations. Against this backdrop, it cannot be said that Plaintiff has plead the facts necessary to establish the prima facie elements of malicious prosecution.

It seems unlikely that leave to amend could solve these issues. The Court previously advised Plaintiff on the elements of a malicious prosecution action and the various considerations that entered into those elements, but Plaintiff is still unable to allege facts that meet the plausibility standard for a complaint. Thus, dismissal without leave to amend is appropriate here.

///
///
///
///
///
///
///
///

---

[14] Moreover, it seems unlikely that Plaintiff could truthfully allege that there was no probable cause for the case against him—one of the documents he attaches to the FAC is a transcript of the preliminary hearing in Merced County Superior Court in which a judge specifically found that there was probable cause that Plaintiff committed the enumerated offenses. Reporter's Transcript of Preliminary Hearing 45:17-46:3, ECF No. 14, Exh. F.

## V. RECOMMENDATION

For the reasons set forth above, the Court finds that the Complaint fails to state a claim under 28 U.S.C. § 1915(e)(2). Accordingly, it is recommended that the First Amended Complaint be DISMISSED WITHOUT LEAVE TO AMEND.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**February 13, 2015**__                    _____/s/ Gary S. Austin_____
                                                                    UNITED STATES MAGISTRATE JUDGE